**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PHILLIP LONG DANG, D.C., P.C., : <br> d/b/a BUFORD HIGHWAY INJURY : <br> CENTER, individually and on behalf : <br> of all other persons and entities : <br> similarly situated, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> XLHEALTH CORPORATION, *et al*., : <br>     Defendants. | CIVIL ACTION NO. <br> 1:09-CV-1076-RWS |

**ORDER**

This case comes before the Court on Plaintiff's First Motion to Certify Class [59], Defendants' Motion for Summary Judgement [80], Defendants' Motion for Oral Argument [82], Plaintiff's Motion for Partial Summary Judgment [87],[1] and Defendants' Motion to Strike Plaintiff's Trial Plan, or Alternatively, Notice of Objection to Plaintiff's Trial Plan [94].

---

[1] Plaintiff has styled its motion as a Motion for Summary Judgment. However, it has confirmed that it is only seeking partial summary judgment on whether the communication was an advertisement. Pl.'s Reply, Dkt. No. [87-1] at 8.

AO 72A
(Rev.8/82)

## I. Statement of Facts

Defendants Care Improvement Plus Group Management, LLC ("CIP Group") and Care Improvement Plus South Central Insurance Company ("CIP") are wholly-owned subsidiaries of Defendant XLHealth, a preferred provider organization that owns and operates Medicare Advantage health plans (collectively, "Defendants"). Def.'s SMF, Dkt. No. [80-15] at ¶ 1. As a Medicare Advantage plan, the Defendants contract with the Centers for Medicare and Medicaid Services ("CMS"). Id. at ¶ 5. CMS then pays the Defendants on a capitated rate, or based upon the number of Medicare recipients who subscribe to the Defendants' plan. Id. at ¶¶ 6-7. Once a person subscribes to Defendants' plan, Defendants' plan "replaces" the subscriber's Medicare coverage under Original Medicare. Id. at ¶ 6.

In order to contract with CMS, the Defendants first had to meet CMS's provider standards, which set out a minimum requirement for number and types of healthcare providers. Defendants received this approval on January 1, 2007 for portions of Maryland, Arkansas, Missouri, Georgia and South Carolina. Id. at ¶ 8; Pl.'s Resp. SMF, Dkt. No. [88-1] at ¶ 8. However, as a regional, open-access preferred provider, its members can see any Medicare-licensed

2

healthcare provider within the Defendants' service area. Def.'s SMF, Dkt. No. [80-15] at ¶ 11.

Dr. Phillip Long Dang, a doctor of chiropractic, solely owns and controls Plaintiff, the Buford Highway Injury Center ("Plaintiff").  Aff. Dang, Dkt. No. [7-2] at ¶ 3.  In November 2008, the Defendants sent facsimiles ("faxes") to Plaintiff, among others. Id. at ¶ 5.  These faxes purported to be invitations to Care Improvement Plus's Provider Education Seminars. See Cmpl., Dkt. No. [1-2] Ex. A, at 7. The seminars promised to offer providers, such as Plaintiff, information regarding claims and utilization management, to demonstrate use of CIP's secure provider portal, and to afford providers and their staffs opportunities to meet CIP representatives. Id.  The background of the fax was a dark watermark of CIP's logo and a majority of the communication was composed of the dates, times, and locations of the seventeen seminars which CIP planned to administer. Id.

Plaintiff filed a "Junk Fax" claim in the Superior Court of Fulton County, Georgia, on March 10, 2009.  Plaintiff alleges that the faxes were unsolicited advertisements under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Following removal, the Defendants filed a motion to dismiss to

AO 72A
(Rev.8/82)

Plaintiff's amended complaint. Judge Martin then issued an order transforming the motion to dismiss into one for summary judgment on the issue of whether the advertisement was "unsolicited." Judge Martin found that, as a matter of law, she could not rule that Plaintiff understood that he had given the Defendants consent to send the fax. Order, Dkt. No. [20] at 22.

Following discovery, the Defendants now move for summary judgment asking this court to hold that the faxes were not "advertisements" under the TCPA, and Plaintiff has filed a cross-motion for summary judgment on the "advertisement" issue seeking the converse. Additionally, Plaintiff has sought permission to certify a class and Defendants have sought to strike, or alternatively object, to the Plaintiff's suggested trial plan. The Court will consider the motions in turn.

## II. Preliminary Matters

As an initial matter, Defendants have requested oral argument on the motions for class certification and summary judgment. Because the Court finds that the briefing was sufficient on those matters, Defendants' Motion for Oral Argument [82] is **DENIED**.

4

AO 72A
(Rev.8/82)

As well, the parties differ about the order in which the Court should take up the motions for class certification and the cross-motions for summary judgment. Defendants request this Court to first consider the cross-motions; the Plaintiff seeks a ruling on class certification. The Court will address the cross-motions for summary judgment first because if the communication is not an advertisement as a matter of law, class certification would be moot.

### III. Cross Motions for Summary Judgment

A. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations

6

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

B. Whether the Communication was an "Advertisement"

The TCPA prohibits sending any "unsolicited advertisement" to any telephone facsimile ("fax") machine within the United States. 47 U.S.C. § 227(b)(1)(C) (2010). An "unsolicited advertisement" is statutorily defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5) (2010). Judge Martin previously ruled that the terms "unsolicited" and "advertisement" are separate and distinct inquiries for the Court. Order, Dkt.

7

No. [20] at 9-11. Therefore, the Court will consider whether the communication was an "advertisement" under the TCPA, apart from Judge Martin's previous decision regarding whether the message was "unsolicited."

"[M]essages that do not promote a commercial product or service . . . are not unsolicited advertisements under the TCPA." In re Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 & the Junk Fax Prevention Act of 2005, 21 F.C.C.R. 3787, 3810 (F.C.C. Apr. 6, 2006) ("FCC Promulgation"); Phillips Randolph Enters. v. Adler-Weiner Research Chicago, Inc., 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007). Therefore, this Court is to determine whether the purpose of the communication was to promote a good or service, or in contrast, was informational.

Plaintiff argues that under the FCC's Promulgation, "a free seminar fax is an advertisement under the TCPA without regard to whether any commercial activity occurs at the seminar." Pl.'s PMSJ, Dkt. No. [87-1] at 14. Plaintiffs cite the following language for their proposition:

> [The FCC] concludes that facsimile messages *that promote goods and services* even at no cost, such as free magazine subscriptions, catalogs, or *free consultations or seminars*, are unsolicited advertisements under the TCPA's definition. *In many instances*, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are *often* part of an

8

>overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that *such* messages describe the 'quality of any goods or services.' Therefore, facsimile communications regarding *such* free goods and services, if not purely 'transactional,' would require the sender to obtain the recipient's permission beforehand, in the absence of an EBR.

FCC Promulgation, 21 F.C.C.R. at 3814 (emphasis added).   However, Plaintiff's interpretation ignores the plain qualifying language used by the FCC. First, the FCC states that these messages must still "promote goods and services." Second, the FCC makes clear that these free seminars are problematic "in many instances" or "often"–not always. Third, when the FCC states that it is "reasonable to presume that such messages" are violative, the FCC uses the word "such" to refer back to messages which "promote goods and services" or are essentially pretextual. Therefore, the Court does not read the FCC Promulgation as creating a *per se* ban on free seminar communications.

This interpretation is also consistent with the TCPA, the authorizing statute for this promulgation.  In enacting the TCPA, Congress clearly set out that the statute was only to bar "any material advertising the commercial availability or quality of any property, goods, or services."  47 U.S.C. §

9

227(a)(5) (2010). For the FCC to then find, *per se*, that all free seminars violated the statute–without concern for whether the seminar promoted the commercial availability of goods and services–would exceed that agency's mandate, and this Court would not be bound by that regulation. See Cadet v. Bulger, 377 F.3d 1173, 1185 (11th Cir. 2004) (holding that an agency's interpretation is controlling unless it is "arbitrary, capricious, or manifestly contrary to the statute"). However, again, the Court finds that–on its face–the FCC's language does not create a wholesale ban on free seminars, but instead only on ones which promote "goods and services."

Under this scheme, the Court finds as a matter of law that the Defendants' communication was not an advertisement under the TCPA. Instead of "promoting goods and services" in the commercial sense, Defendants' communication alerted the recipient that a free seminar would be offered, wherein the recipient could learn more about the Defendants' billing processes and thereby speed up payment to the recipient. Cmpl., Dkt. No. [1-2], Ex. A at 7. As well, the recipient was given the opportunity to meet the Defendants' representatives. This type of communication does not detail the "commercial availability or quality" of the healthcare plan, but rather seeks to

10

AO 72A
(Rev.8/82)

inform the recipient.[2] There is nothing on the communication which seeks to sell insurance to the recipient, or even promote the benefits of becoming a contracted provider, assuming the recipient was not one already.

This is not pretext for a commercial enterprise. At bottom, this case is more like promoting a research trial–information–than a "free" online marketplace which seeks to unite the buyers and sellers of goods–commerce. Compare Phillips Randolph Enters., 526 F. Supp. 2d at 853 with G.M. Sign, Inc. v. MFG.com, Inc., 2009 WL 1137751, at *2-3 (N.D. Ill. Apr. 24, 2009). Because this communication was not an advertisement under the TCPA, Defendants' Motion for Summary Judgment [80] is **GRANTED** and Plaintiff's Partial Motion for Summary Judgment [87] is **DENIED**.

### IV. Remaining Motions

Because the Court has granted summary judgment for Defendant, Plaintiff's First Motion to Certify Class [59] and Defendants' Motion to Strike the Plaintiff's Trial Plan [94] have been rendered **MOOT.**

---

[2]Plaintiff argues that in order to be deemed "informational," the communication must satisfy the test set out in footnote 187 of the FCC Promulgation. Pl.'s MPSJ, Dkt. No. [87-1] at 15. However, that test is used to determine whether an incidental advertisement within a newsletter-type setting would transform an informational document into a commercial one. But, because this is clearly not a newsletter or a question of incidental advertising, that test does not apply.

11

## V. Conclusion

Defendants' Motion for Oral Argument [82] is **DENIED**.  Defendants' Motion for Summary Judgement [80] is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment [87] is **DENIED**.  As a result, Defendants' Motion to Strike Plaintiff's Trial Plan, or Alternatively, Notice of Objection to Plaintiff's Trial Plan [94] and Plaintiff's First Motion to Certify Class [59] are now **MOOT**. The Clerk is directed to close this case.

**SO ORDERED** this   7th   day of February, 2011.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)